Atherton, J.
The principal controversy in this case is between the two building associations on the one side and Charles T. Clark on the other, touching the disposition of the proceeds of the sale of the south half of lot No. 36. The former claim the funds in the hands of the court under their unrecorded mortgages, and the latter under the mortgage made by Waters to Johns, and under the lien of the judgment obtained against Waters by Royce, assignee, etc. What are the relative rights of the associations and Clark to the fund, and which of them is entitled to it?
It is claimed on behalf of the associations that inasmuch as Johns and those claiming under linn, had knowledge of the amount, existence and non-payment of the mortgages, and that one of the mortgages was given to the Home Building and Loan Association for purchase-money, and the other was given to the Capital Building and Loan Association for money borrowed to make the down payment to the former association, their equity is superior to that of Clark, and that Johns and Clark are not bona fide purchasers, and that the unrecorded mortgages are first to be satisfied; and further, that the judgment held by Clark on these premises is confessedly subsequent to the record of these mortgages and so must be postponed to them. It is quite clear that the mortgage to the Capital Building and Loan Association is not a better lien because loaned to enable Johns to *433 make the first payment upon the premises in question or to secure money borrowed to pay for the land. Stansell v. Roberts, 13 Ohio, 148.
As to the Home Building and Loan Association, it does appear that their mortgage was given for purchese-money, and that the subsequent purchasers and incumbrancers took whatever interests they had with full knowledge of that fact. It is, however, claimed on behalf of Clark that the Home Building and Loan Association has not declared upon its supposed vendor’s lien, but relies simply upon its mortgage and has filed a petition the sole object and prayer of which is to foreclose its mortgage. The petition does ■seem to be so framed, and, conceding it to be simply a ease to foreclose the mortgages, how then stand the rights of the parties ?
Both mortgages were made by Johns to the associations at the same time, but were not filed for record for more than a year, and not until long after the conveyance of Johns to "Waters of the south half of lot 36, and his mortgage back to Johns had been executed and recorded. The statute provides, “ Sec. 4133. All mortgages executed agreeably to the provisions of this chapter shall be recorded in the office of the recorder of the county in which the mortgaged premises are situated, and shall take effect from the time the same are delivered to the recorder of the proper county for record.” In construing this statute this court formerly held and announced that “ a mortgage has no effect, either in law or equity, previous to its delivery to the recorder of the county for record.” Holliday v. Franklin Bank, 16 Ohio, 533.
This declaration of the law had reference to third parties who were not parties to the unrecorded mortgage, and when the question of the effect of the unregistered instrument came to be adjudicated between the parties to it, the court, in Sidle v. Maxwell, 4 Ohio St. 236, held that, “ the object of the statute requiring the record of mortgages being notice to persons other than those who are parties to *434 the instrument, a mortgage may be valid and binding without such record as between the parties to the instrument.
. . . The language of the court in the case of Holliday v. The Franklin Bank of Columbus, 16 Ohio, 533, declaring ‘ that the delivery of a mortgage for record is a part of the .execution of the instrument, and that, before the filing for record, a mortgage has no validity either in law or in equity,’ must be received with the qualification that it has exclusive reference to the effect of the instrument as to those not parties to it.” To the same effect are Fosdick v. Barr, 3 Ohio St. 471; Grill v. Finney, 12 Ohio St. 38; Stewart v. Hopkins, 30 Ohio St. 502 ; Riley v. Rice, 40 Ohio St. 441.
It follows from these authorities that, as between the • building associations and Johns, the mortgages were as valid and binding as if recorded. Waters took the land, so far as he acquired an interest, freed from the lien of the mortgages, although he had full notice and knowledge of their existence. As to Waters, the mortgages of the building associations did not take effect, because not recorded, when he acquired his interest in the south half of lot No. 36. Magee v. Beatty, 8 Ohio, 396; Stansell v. Roberts, 13 Ohio, 148; Mayham v. Coombs, 14 Ohio, 428; Bercaw v. Cockerill, 20 Ohio St. 163.
“ The legal rights of such persons can not be displaced at the instance of the holder of a prior unrecorded mortgage or contract for a mortgage, although acquired with notice of such mortgage or of the existence of such contract; the object of the law being to avoid all the vexed questions of notice, actual or constructive, in determining priorities of lien.” Bloom v. Noggle, 4 Ohio St. 46.
After the conveyance of Johns to Waters and his concurrent mortgage back to Johns, Waters owned the south half of lot No. 36, subject to a mortgage lien of $500, and Johns still held and owned an interest in the land, and a lien upon it for $500.
As to Waters, the unrecorded mortgages created no lien on his equity of redemption; but as to Johns he, and the interest he retained, was subject to the unrecorded mort *435 gages, and when the property was sold by j udicial process, • and converted into money, the fund, to the extent of the $500 and interest, was applicable pro rata to the payment of the unrecorded mortgages, unless the sale and transfer of the notes and mortgage to Clark requires the application of a different rule.
As will be observed, on September 17, 1878, Johns filed an answer and cross-petition, in the case, in which he alleged that there was due and to become due to him, on the mortgage from Waters, $500 and interest, and insisted if the south half of lot No. 36 should be sold, that the sum Waters owed him should be applied to pay the unrecorded mortgages to the associations.
After this answer was filed, and long after the suit had been pending, and after the association mortgages had been filed for record, Clark bought, the Johns notes and mortgage. He admits in his answer that he bought after their maturity, but alleges that Johns, for a valuable consideration, indorsed, assigned, and delivered the notes and mortgage to him. The plaintiffs insist that there was no proof offered on the trial of the payment of any consideration for the notes. But Clark alleges directly a full consideration, and the only supposed traverse of that averment of Clai’k in the plaintiffs’ reply is as follows: “ That plaintiffs have no means of knowing, except from the allegations of said answer, any thing in regard to the following allegation therein contained, that, ‘ after the maturity of said note, the said Augustus Johns, for a valuable consideration, indorsed and delivered said note to said Charles T. Clark, and he is now the lawful holder and owner thereof,’ ” and “ therefore can not admit or deny the same, but demands proof thereof.” This was no denial of the facts alleged by Clark, and did not put him on proof, as the averments were admitted by that form of pleading.
But assuming Clark paid a valuable consideration, he purchased the notes and mortgage of a person bound by the unrecorded mortgages; he purchased them after due; he procured them of a person whose answer filed in the *436 ■case admitted substantially the superior equity of the plaintiffs, and sought to have the money otherwise coming to him applied to pay the claims which he admitted himself legally and equitably bound to pay; he purchased pending the suit and long after the association mortgages were recorded, and he takes no better right or title to the Johns notes than Johns himself had; and the proceeds of the Waters mortgage should have been applied to the payment of the association mortgages pro rata according to the amounts secured by them respectively.
Another question remains, whether the lien of the judgment held by Clark or the liens of the unrecorded mortgages are superior. When the sale of the south half of lot No. 36 was made to Waters, he took such interest as he then acquired free from the lien of the unrecorded mortgages. The subsequent, recording of these mortgages could not and did not create or revive their lien against the interest he acquired under his deed.
When the judgment lien was obtained by Royce upon the equity of redemption Waters owned in the land, it was a valid incumbrance subject only to the mortgage to Johns, and was valid against the mortgages to the building associations.
It follows, therefore, that, after satisfying the Johns mortgage (the proceeds of which are to be paid to the associations), the Royce judgment is to be next satisfied, and the residue of the purchase-money, if any, is to be paid to Kittie Waters.

Judgment reversed, and cause remanded.

Johnson, J., dissented.